**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

| | |
|---|---|
| IN RE FOUR AUTOMATED GUIDED VEHICLES: <br><br> TRANSBOTICS, A DIVISION OF SCOTT SYSTEMS INTERNATIONAL, INC., <br><br>       Plaintiff, <br><br>   v. <br><br> UNITED STATES OF AMERICA, KPMG, LLP, and INFINITY ROBOTICS, LLC, <br><br>       Defendants. | Case No. 1:24-cv-00071-LAG |

**DEFENDANT KPMG LLP'S**
**<u>MOTION TO DISMISS THE VERIFIED COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ..........................................................................................................1

BACKGROUND ...........................................................................................................2

LEGAL STANDARD AND CHOICE OF LAW .........................................................5

      A.     Legal Standard .....................................................................................5

      B.     Choice of Law ......................................................................................5

            1.     Georgia Law Governs Transbotics' Allegations that the Terms and Conditions Apply. ..................................................................5

            2.     North Carolina Law Governs the Interpretation of the Terms and Conditions. ............................................................................6

            3.     Georgia Law Governs Transbotics' Replevin and Trover Claim. ...............7

ARGUMENT .................................................................................................................7

I.      Transbotics' Claim for an Injunction in Trover and Replevin Must Be Dismissed. ...........7

      A.     Transbotics Fails to Allege that It Possesses Title or Any Legally Sufficient Interest in the AGVs, Which is a Necessary Element to Adequately Plead a Replevin Claim. ........................................8

            1.     The Terms and Conditions Do Not Govern the Purchase Order. ...............8

            2.     Even if They Had Been Agreed to, the Terms and Conditions Give Transbotics, at Most, an Unperfected Security Interest. ...........................12

      B.     The Complaint Fails to Allege that KPMG "Possesses" the AGVs. .....................14

      C.     Transbotics Has Failed to Adequately Plead a Claim for Injunctive Relief. .........15

II.     Transbotics' *In Rem* Claim Also Must Be Dismissed Because It Fails to Allege that It Has Retained Title to the AGVs. ...................................................................16

III.    Alternatively, the Terms and Conditions Require These Claims to be Brought in North Carolina. ...................................................................................17

IV.    Transbotics' Claim for Attorneys' Fees Fails Because Transbotics Fails to Adequately Plead that KPMG Has Acted in Bad Faith or Has Been "Stubbornly Litigious." ............................................................................18

CONCLUSION ............................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*All Metro Glass, Inc. v. Tubelite, Inc.*,
227 F. Supp. 3d 1007 (D. Minn. 2016)............................................................11, 12

*Architectural Ingenieria Siglo XXI, LLC v. Dominican Republic*,
788 F.3d 1329 (11th Cir. 2015) ..............................................................................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................5

*Atlanta Econ. Dev. Corp. v. Ruby-Collins, Inc.*,
425 S.E.2d 673 (Ga. Ct. App. 1992)......................................................................9

*Ballou v. Asset Mktg. Servs., LLC*,
46 F.4th 844 (8th Cir. 2022) ................................................................................12

*Barrs v. Auto-Owners Ins. Co.*,
564 F. Supp. 3d 1362 (M.D. Ga. 2021) ..................................................................5

*Batson-Cook Co. v. TRC Worldwide Eng'g, Inc.*,
No. 3:10-CV-193-TWT, 2011 WL 2182727 (N.D. Ga. June 3, 2011)..............9, 11

*Century Bank of Ga. v. Bank of Am., N.A.*,
685 S.E.2d 82 (Ga. 2009)....................................................................................16

*Chaparro v. Carnival Corp.*,
693 F.3d 1333 (11th Cir. 2012) ..............................................................................5

*Cisneros v. Petland, Inc.*,
972 F.3d 1204 (11th Cir. 2020) ..............................................................................9

*Coleman v. Retina Consultants, P.C.*,
687 S.E.2d 457 (Ga. 2009)....................................................................................16

*Cont'l Airlines, Inc. 401(k) Sav. Plan v. Almodovar-Roman*,
No. CV 16-5766, 2018 WL 2357754 (D.N.J. May 24, 2018) ................................15

*Crenshaw v. Lister*,
556 F.3d 1283 (11th Cir. 2009) ..............................................................................5

*Davis v. Walker*,
655 S.E.2d 634 (Ga. Ct. App. 2007)......................................................................18

*Day v. Taylor*,
    400 F.3d 1272 (11th Cir. 2005) ...............................................................9

*Eckart v. Allstate Northbrook Indem. Co.*,
    No. 23-10753, 2023 WL 8651035 (11th Cir. Dec. 14, 2023)...................................9

*Exec. Cars, LLC v. W. Funding II, Inc.*,
    826 S.E.2d 370 (Ga. Ct. App. 2019) .........................................................8, 13, 14

*Fordham v. Eason*,
    521 S.E.2d 701 (1999) ...............................................................12

*Grant v. Newsome*,
    411 S.E.2d 796 (Ga. Ct. App. 1991) ...............................................................7

*Griffin Indus., Inc. v. Irvin*,
    496 F.3d 1189 (11th Cir. 2007) ...............................................................5

*Henderson v. OneWest Bank FSB, ISAOA*,
    No. 1:10-CV-1989-TCB-LTW, 2011 WL 13216949 (N.D. Ga. July 25, 2011) ...................17

*Horton v. Dennis*,
    750 S.E.2d 493 (Ga. Ct. App. 2013) ...............................................................19

*Hous. Auth. v. MMT Enters., Inc.*,
    475 S.E.2d 642 (Ga. 1996)...............................................................15, 16

*Int'l Bus. Machs. Corp. v. Kemp.*,
    536 S.E.2d 303 (Ga. Ct. App. 2000) ...............................................................6, 7

*Jaakola v. Bank of NY Mellon*,
    No. CIV. 13-2919 DSD/JSM, 2014 WL 4829419 (D. Minn. Sept. 29, 2014) ...................15

*Jones v. Frickey*,
    618 S.E.2d 29 (Ga. Ct. App. 2005) ...............................................................11

*KCK Res., Inc. v. Schwarz Properties, L.L.C.*,
    885 S.E.2d 140 (N.C. Ct. App. 2023) ...............................................................12, 13

*King v. City of Albany*,
    No. 1:07-CV-158 (WLS), 2009 WL 10712945 (M.D. Ga. Mar. 31, 2009)...................14

*Kruchoski v. MiMedx Grp., Inc.*,
    No. 1:17-CV-00577-LMM, 2017 WL 3433697 (N.D. Ga. June 13, 2017)...................17, 18

*Levenson v. Word*,
    668 S.E.2d 763 (Ga. Ct. App. 2008) ...............................................................7

*Mallayev v. Cohen*,
  No. 1:07-CV-0094-JEC, 2009 WL 10697493 (N.D. Ga. Mar. 27, 2009) .............................15

*Marine Midland Bank v. United States*,
  687 F.2d 395 (Ct. Cl. 1982) .........................................................................................6

*Mass. Bay Ins. Co. v. Fort Benning Family Cmtys., LLC*,
  No. 4:15-CV-75-CDL, 2016 WL 8944452 (M.D. Ga. Sept. 27, 2016) ...............................6

*Minden Pictures, Inc. v. RehabMart LLC*,
  No. 3:24-cv-00013-TES, 2024 WL 2819105 (M.D. Ga. June 3, 2024) ...............................14

*Mt. Hawley Ins. Co. v. E. Perimeter Pointe Apartments, LP*,
  409 F. Supp. 3d 1319 (N.D. Ga. 2019) ..........................................................................6

*In re Novartis Vaccines & Diagnostics, Inc.*,
  735 S.E.2d 634 (N.C. Ct. App. 2012) ............................................................................13

*Radiant Glob. Logistics, Inc. v. Cooper Wiring Devices, Inc.*,
  No. 1:11-cv-4254-SCJ, 2013 WL 12247048 (N.D. Ga. Sept. 20, 2013) .................9, 10, 11

*Scovill Fasteners, Inc. v. N. Metals, Inc.*,
  692 S.E.2d 840 (Ga. Ct. App. 2010) .............................................................................9

*Shaw's Menswear, Inc. v. Delongy*,
  No. 5:19-CV-104 (MTT), 2019 WL 3291542 (M.D. Ga. July 22, 2019) ..........................17

*Smith v. United States*,
  873 F.3d 1348 (11th Cir. 2017) ....................................................................................15

*Stockton v. Shadwick*,
  870 S.E.2d 104 (Ga. Ct. App. 2022) .............................................................................19

*Stouffer v. J.P. Morgan-Chase Bank N.A.*,
  No. 3:18-CV-0591-G, 2018 WL 6570871 (N.D. Tex. Dec. 12, 2018) ..............................15

*Taylor v. Powertel, Inc.*,
  551 S.E.2d 765 (Ga. Ct. App. 2001) .............................................................................7

*Thakkar v. Bay Point Cap. Partners, LP*,
  No. AP 17-5248-WLH, 2018 WL 400728 (Bankr. N.D. Ga. Jan. 12, 2018) ............8, 14, 15

*Thomas B. Olson & Assocs., P.A. v. Leffert, Jay & Polglaze, P.A.*,
  756 N.W.2d 907 (Minn. Ct. App. 2008) .......................................................................12

*Vickers v. Wells*,
  No. 1:05-CV-0930-RWS, 2006 WL 89858 (N.D. Ga. Jan. 11, 2006) ...............................18

*Warren Tech., Inc. v. UL LLC,*
   962 F.3d 1324 (11th Cir. 2020) ............................................................2

*Washington v. Harrison,*
   682 S.E.2d 679 (Ga. Ct. App. 2009) ...................................................7

*Welco Indus., Inc. v. United States.,*
   8 Cl. Ct. 303 (1985) .............................................................................13

*Williams Tile & Marble Co. v. Ra-Lin & Assocs., Inc.,*
   426 S.E.2d 598 (Ga. Ct. App. 1992) ...................................................9

**Statutes**

N.C. Gen. Stat. § 25-9-310(a) ...................................................................13

N.C. UCC § 25-2-401(1) ............................................................................13

O.C.G.A. § 11-2-716 ...................................................................................16

O.C.G.A. § 13-3-2 .......................................................................................11

O.C.G.A. § 13-6-11 ..............................................................................4, 18, 19

O.C.G.A. § 51-10-1 .......................................................................................7

## <u>INTRODUCTION</u>

This action is a contract dispute arising out of a sales contract between Plaintiff Transbotics ("Transbotics") and Defendant Infinity Robotics, LLC ("Infinity") for four Automated Guided Vehicles ("AGVs"). Transbotics alleges that Infinity failed to pay a balance of roughly $615,000 on the $2.8 million purchase price. In addition to suing Infinity for damages based on a breach of contract claim, Transbotics seeks return of the AGVs via replevin and a judgment *in rem* and includes as defendants the United States (the "Government") and KPMG LLP ("KPMG") based on the speculative and conclusory allegation that the Government, KPMG, and/or Infinity has possession of the AGVs. These claims are based on an alleged claim to title in the AGVs that is contradicted by the very contract documents Transbotics attaches and incorporates into the Complaint, which control over contrary allegations. Because Transbotics fails to state a claim against KPMG, and in any event cannot pursue them against KPMG in this venue, the claims against KPMG should be dismissed.

First, Transbotics' claim for "Injunction/Trover/Replevin" against all Defendants fails because the Complaint does not (and cannot) allege that Infinity agreed to "Scott Systems International, Inc.'s standard Terms and Conditions" that Transbotics contends allows it to retain title to the AGVs. Even if those terms governed (which they do not), under governing North Carolina law, terms that purport to allow Transbotics to retain title merely provide for a security interest in the AGVs, which is insufficient to state a claim for replevin and trover. In any event, Transbotics fails to adequately allege that KPMG has possession of the AGVs. Further, Transbotics fails to allege that it is entitled to the extraordinary remedy of injunctive relief because its claims can be redressed with monetary damages.

Second, Transbotics' "Judgment *In Rem*" claim against the AGVs similarly fails because

Transbotics has failed to adequately allege that it has title to the AGVs, as it must to state an *in rem* claim. As with Transbotics' trover and replevin claim, the documents incorporated by reference into the Complaint contradict Transbotics' allegations and show that it has not sufficiently alleged that it has title to the AGVs.

Third, Transbotics' claim for attorneys' fees fails because the underlying claim fails and, separately, because Transbotics does not even attempt to allege KPMG engaged in the type of conduct that gives rise to a claim for fees under Georgia law.

Alternatively, the claims against KPMG must be dismissed because even if Transbotics could state a claim for relief against KPMG (and it cannot), any such claims would need to be brought in North Carolina. Transbotics alleges that Scott Systems International, Inc.'s standard terms and conditions apply, but those terms provide that any "dispute arising from or relating to this agreement shall be resolved solely and exclusively in the courts located in Charlotte, North Carolina." Compl., Ex. B ¶ 28. Transbotics cannot selectively invoke provisions from the terms and conditions it alleges apply and ignore others.

Transbotics seeks relief against KPMG solely due to an alleged failure by Infinity to pay the remaining balance of the purchase price of the purchase order between Infinity and Transbotics. Irrespective of whether Transbotics is ultimately entitled to monetary damages against *Infinity* for this alleged non-payment, the Court should dismiss all claims against KPMG with prejudice.

## **BACKGROUND**[1]

This action arises out of a transaction solely between Transbotics, which is a division of

---

[1] KPMG accepts the Complaint's factual allegations as true only for the purposes of this Motion to Dismiss. *See Warren Tech., Inc. v. UL LLC*, 962 F.3d 1324, 1328 (11th Cir. 2020) ("[T]hough a court considering a motion to dismiss generally accepts the non-moving party's allegations as true, a court is not required to credit 'conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts.'" (citation omitted)).

Scott Systems International Inc., and Infinity. On March 25, 2022, Transbotics provided Infinity with a proposal to sell four AGVs for use at the Marine Corps Logistics Base in Albany, Georgia, identified as Proposal #: JA24443-3 (the "Proposal"). Compl. ¶ 9; Compl., Ex. A. The Proposal identified the terms and conditions of sale as "Transbotics standard Terms and Conditions of Sale." Compl., Ex. A. at 32. Transbotics, however, does not allege that the "Transbotics standard Terms and Conditions of Sale"—or any terms and conditions, for that matter—were attached to the Proposal or otherwise provided to Infinity.

Infinity issued a Purchase Order to Transbotics in "refer[ence] to [Transbotics'] quote #JA24443 Ver. 3 dated 03/25/2022." Compl., Ex. C. The Purchase Order listed the "Payment Terms" set forth in the Proposal, which identified the events on which each payment would be due and the total purchase price of $2,861,552.00. *Id.* The Purchase Order contained no reference to any terms and conditions other than the "Payment Terms" set forth in the Purchase Order. *Id.*

On April 14, 2022, Transbotics sent Infinity a letter thanking Infinity "for accepting Transbotics' Firm Proposal referenced above JA24443 Ver.3 by the issuance of [its] Purchase Order #1581 3/24/2022 in the amount of USD $2,861,552.00 for the equipment and services described in the Proposal" (the "Confirmation Letter"). Compl. ¶ 11; Compl., Ex. D. The Confirmation Letter states that the "Purchase Order constitutes an acceptance of the Proposal and its General System Terms and Conditions." Compl., Ex. D. Transbotics does not allege that the "General System Terms and Conditions"—or any other terms and conditions—were attached to the Confirmation Letter.

Transbotics nevertheless alleges that its Proposal was "subject to **Scott Systems International, Inc.'s standard Terms and Conditions**." Compl. ¶¶ 1, 9 (emphasis added). Transbotics, however, does not allege that Infinity ever *agreed* to, or was provided with, "Scott

Systems International, Inc.'s standard Terms and Conditions." Nor do the documents attached to the Complaint purporting to show offer and acceptance—the Proposal, Purchase Order, and Confirmation Letter—even reference the "Scott Systems International, Inc.'s standard Terms and Conditions." Despite failing to allege that Infinity had agreed to them, Transbotics attaches to its Complaint a document called "Scott Systems International Inc. Terms and Conditions of Sale." Compl., Ex. B. Paragraph 11 of the Scott Systems International Inc. Terms and Conditions of Sale states in part: "Ownership in the Product will pass when full payment relating to that Product is received by SSI [Scott Systems International Inc.]." Compl., Ex. B ¶ 11.

Transbotics alleges that it delivered the AGVs to the Marine Corps Logistics Base on or before September 2023. Compl. ¶ 17. According to Transbotics, Infinity owes it a balance of $615,388.00 on its contract. *Id.* ¶ 18. Based on Paragraph 11 of the "Scott Systems International, Inc's Terms and Conditions of Sale," Transbotics alleges that "[b]ecause full payment has not been received," Transbotics "retains ownership of, and title to, the AGVs." *Id*. ¶¶ 13, 19.

Transbotics does not allege that it had any interaction with KPMG or with the Government or that it had, or currently has, any agreement with either party. Transbotics alleges only, "[u]pon information and belief," that *Infinity* separately "contractually agreed to provide the AGVs to KPMG" and "KPMG contracted with the Marine Corps to provide automation services at the [Marine Corps Logistics Base] and is providing the AGVs to the United States of America pursuant to that contract." *Id.* ¶¶ 15–16.

Based on these allegations, Transbotics asserts two claims against KPMG: (1) a claim for "Injunction/Trover/Replevin," which is asserted against all Defendants (second claim); and (2) a claim for attorneys' fees against all Defendants under O.C.G.A. § 13-6-11 (fourth claim). Transbotics also asserts a claim for breach of contract solely against Infinity (first claim), as well

as a claim for a judgment *in rem* against the AGVs (third claim).

## LEGAL STANDARD AND CHOICE OF LAW

### A.    Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). Mere "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do," and a plaintiff cannot rely on "naked assertions devoid of further factual enhancement." *Id*. (cleaned up). "Factual allegations that are merely consistent with a defendant's liability" are insufficient. *Chaparro v. Carnival Corp*., 693 F.3d 1333, 1337 (11th Cir. 2012) (quotation marks omitted).

Where, as here, exhibits are attached to the complaint, those exhibits are "part of the pleading 'for all purposes.'" *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205 (11th Cir. 2007). And when an exhibit attached to a complaint "contradict[s] the general and conclusory allegations" of a complaint, the "exhibits govern." *Id*. at 1205-06; *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) ("It is the law in this Circuit that when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." (internal quotations marks omitted)).

### B.    Choice of Law

In diversity cases such as this, a federal court "must apply 'the law of the forum in which [it] sits.'" *Barrs v. Auto-Owners Ins. Co*., 564 F. Supp. 3d 1362, 1372 (M.D. Ga. 2021) (quoting *LaTorre v. Conn. Mut. Life Ins. Co*., 38 F.3d 538, 540 (11th Cir. 1994)). Because Georgia is the forum state here, Georgia's choice-of-law rules apply. *Id.*

#### 1.    Georgia Law Governs Transbotics' Allegations that the Terms and Conditions Apply.

With respect to contract claims, Georgia courts apply the doctrine of *lex loci contractus*,

which provides that contracts are governed by the law of the place "where they are made, except where it appears from the contract itself that it is to be performed in a State other than that in which it was made, in which case . . . the laws of that sister State will be applied.'" *Mass. Bay Ins. Co. v. Fort Benning Family Cmtys., LLC*, No. 4:15-CV-75-CDL, 2016 WL 8944452, at \*3 (M.D. Ga. Sept. 27, 2016) (quoting *Gen. Tel. Co. of Se. v. Trimm*, 311 S.E.2d 460, 461 (Ga. 1984)); *see also Int'l Bus. Machs. Corp. v. Kemp.*, 536 S.E.2d 303, 307 (Ga. Ct. App. 2000) (explaining that, where last act essential to form contract is the acceptance, then the contract would be completed in the state where the acceptance occurred).

However, "there is an exception when the law of the foreign state is the common law." *Mt. Hawley Ins. Co. v. E. Perimeter Pointe Apartments, LP*, 409 F. Supp. 3d 1319, 1326 (N.D. Ga. 2019), *aff'd*, 861 F. App'x 270 (11th Cir. 2021). "[T]he application of another jurisdiction's laws is limited to statutes and decisions construing those statutes. When no statute is involved, Georgia courts apply the common law as developed in Georgia rather than foreign case law." *Id.* (citation omitted). Because performance of the contract (i.e., delivery of the AGVs) occurred in Georgia (Compl. ¶ 17), Georgia law applies to the question of whether the terms and conditions govern the Purchase Order.

### 2. North Carolina Law Governs the Interpretation of the Terms and Conditions.

If the Court finds that the terms and conditions were incorporated into the Purchase Order, then North Carolina law would govern interpretation of those terms and conditions. The terms and conditions attached to the Complaint contain a choice of law provision stating that "[t]he validity, performance and all other matters relating to the interpretation and effect of this contract shall be governed by the State of North Carolina, USA." Compl, Ex. B ¶ 28. Thus, if those terms and conditions apply to the Purchase Order, North Carolina law would govern the interpretation of the

terms and conditions.

### 3. Georgia Law Governs Transbotics' Replevin and Trover Claim.

Georgia law also applies to Transbotics' Second Claim. Actions for trover and replevin sound in tort. *See* O.C.G.A. § 51–10–1; *see also Levenson v. Word,* 668 S.E.2d 763, 765 (Ga. Ct. App. 2008), *aff'd* 686 S.E.2d 236 (Ga. 2009). Georgia courts apply the rule of *lex loci delictis*, which provides that "tort cases are generally governed by the substantive law of the place where the tort or wrong occurred. *Int'l Bus. Machs. Corp.*, 536 S.E.2d at 306. "In torts of a transitory nature, the place of the wrong is the place where the last event occurred necessary to make an actor liable for the alleged tort." *Id.* Here, Transbotics alleges that the wrongful possession has occurred in Georgia. Thus, Georgia law governs Transbotics' claim for trover and replevin.

### <u>ARGUMENT</u>

### I.    Transbotics' Claim for an Injunction in Trover and Replevin Must Be Dismissed.

Transbotics alleges that it is entitled "to a preliminary and permanent injunction and judgment in trover and replevin against Defendants ordering the return of the AGVs to [Transbotics]." Compl. ¶ 39.[2] This claim fails because Transbotics fails to allege that it has title to the AGVs or any legal interest that would entitle Transbotics to possess the AGVs, it makes only a conclusory and speculative allegation that KPMG possesses the AGVs, and it fails to adequately allege that it is entitled to the extraordinary remedy of injunctive relief.

---

[2] Georgia law, O.C.G.A. § 51–10–1, provides that "[t]he owner of personalty is entitled to its possession. Any deprivation of such possession is a tort for which an action lies." *Washington v. Harrison*, 682 S.E.2d 679, 682 (Ga. Ct. App. 2009) (citing O.C.G.A. § 51–10–1). This statute embodies the common law action of trover, replevin, and conversion. *Id.*; *Grant v. Newsome*, 411 S.E.2d 796, 797 (Ga. Ct. App. 1991); *Taylor v. Powertel, Inc*., 551 S.E.2d 765, 769 (Ga. Ct. App. 2001).

A. **Transbotics Fails to Allege that It Possesses Title or Any Legally Sufficient Interest in the AGVs, Which is a Necessary Element to Adequately Plead a Replevin Claim.**

To adequately plead a claim for replevin, Transbotics must allege that it "'has title to the property or a right of possession.'" *Exec. Cars, LLC v. W. Funding II, Inc.*, 826 S.E.2d 370, 378 (Ga. Ct. App. 2019) (citation omitted). The Complaint fails to do so because the exhibits attached to the Complaint make clear that Infinity never agreed to the terms and conditions on which Transbotics relies for its claim of title, and even if those terms applied, they would at most give Transbotics a security interest, which is insufficient for replevin.

1. **The Terms and Conditions Do Not Govern the Purchase Order.**

Transbotics' replevin claim relies on its allegation that "Scott Systems International, Inc.'s standard Terms and Conditions" provided for its retention of ownership and title in the AGVs in the event of non-payment by Infinity. Compl. ¶¶ 13, 19. The Complaint, however, fails to allege that Transbotics and Infinity *ever* agreed to those terms and conditions, and the exhibits attached to the Complaint confirm that Infinity did not. Absent title, Transbotics' replevin claim fails. *Exec. Cars, LLC.*, 826 S.E.2d at 378; *Thakkar v. Bay Point Cap. Partners, LP*, No. AP 17-5248-WLH, 2018 WL 400728, at *6 (Bankr. N.D. Ga. Jan. 12, 2018), *aff'd sub nom. Thakkar v. Baypoint Cap. Partners, LP*, No. 1:18-CV-0357-RWS, 2018 WL 11150621 (N.D. Ga. May 23, 2018) (dismissing claim under O.C.G.A. § 51–10–1 where plaintiffs did not "allege facts to show that they have title to the property or the right of possession").

While Transbotics alleges that its contract with Infinity is "subject to Scott Systems International, Inc.'s standard Terms and Conditions," Compl. ¶ 9, the actual contract incorporated by reference in the Complaint controls over such vague or conclusory allegations. *See Architectural Ingenieria Siglo XXI, LLC v. Dominican Republic*, 788 F.3d 1329, 1341 n.10 (11th Cir. 2015) (concluding that the plaintiff's allegation was "not entitled to a presumption of veracity"

where it was "contradict[ed]" by the contract attached to the complaint); *Cisneros v. Petland, Inc*., 972 F.3d 1204, 1218 (11th Cir. 2020) (upholding dismissal where a contract attached to the complaint was in "stark contrast" to the complaint's "conclusory assertions"); *Day v. Taylor*, 400 F.3d 1272, 1276-77 (11th Cir. 2005) (considering a contract that was "central to the plaintiff's claim," noting that the court was "not bound by the legal conclusions in the complaint" and concluding that the contract at issue supported dismissal); *Eckart v. Allstate Northbrook Indem. Co.*, No. 23-10753, 2023 WL 8651035, at *4 (11th Cir. Dec. 14, 2023) (explaining that "facts from a document incorporated by reference may dispel a plaintiff's conclusory allegations" and finding that contractual release and other documents supported dismissal). Here, Transbotics does not allege that Infinity specifically agreed to Scott Systems International's standard Terms and Conditions, and the contracting documents—the Proposal, Purchase Order, and Confirmation Letter—attached to the Complaint confirm they did *not*.

The Uniform Commercial Code (the "UCC") governs contracts for the sale of goods. *Scovill Fasteners, Inc. v. N. Metals, Inc.*, 692 S.E.2d 840, 842 (Ga. Ct. App. 2010). In Georgia, incorporation of terms by reference can only be effective when the reference made has a reasonably *clear and ascertainable meaning. See Williams Tile & Marble Co. v. Ra-Lin & Assocs., Inc.*, 426 S.E.2d 598, 599 (Ga. Ct. App. 1992). Under Georgia law, additional terms are not "clear and ascertainable" where (1) those terms are not disclosed; or (2) there is ambiguity as to the precise terms. *See Radiant Glob. Logistics, Inc. v. Cooper Wiring Devices, Inc.*, No. 1:11-cv-4254-SCJ, 2013 WL 12247048, at *5 (N.D. Ga. Sept. 20, 2013); *Atlanta Econ. Dev. Corp. v. Ruby-Collins, Inc*., 425 S.E.2d 673, 675 (Ga. Ct. App. 1992) (omission of key terms rendered the intent to incorporate by reference "ambiguous"); *Batson-Cook Co. v. TRC Worldwide Eng'g, Inc.*, No. 3:10-CV-193-TWT, 2011 WL 2182727, at *2 (N.D. Ga. June 3, 2011) (finding terms were not

incorporated where there were inconsistencies that created "ambiguity in the contract"). Here, both grounds for concluding the terms are not incorporated into the contract are evident from the face of the Complaint and its exhibits.

First, Transbotics does not allege that terms and conditions were disclosed to Infinity. The Proposal refers to "Transbotics' standard Terms and Conditions of Sale," Compl., Ex. A at 32, but Transbotics does not allege these terms (or any others) were included with the Proposal, Purchase Order, or the Confirmation Letter, or that they were ever provided to Infinity for review.[3] Absent a disclosure, the Proposal's reference to "Terms and Conditions" does not have a "clear and ascertainable meaning," and thus, these terms and conditions cannot be deemed to have been incorporated by reference under Georgia law. *Radiant Glob. Logistics, Inc.*, 2013 WL 12247048, at *5 & 5 n.6 (where contract provided that "current terms may be found on the Carrier's website" but there was no argument that the terms on the website included the rate terms at issue, those terms were "not disclosed").

Second, ambiguity exists as to the precise terms to be incorporated. Transbotics alleges that the agreement is subject to "Scott Systems International, Inc.'s *standard Terms and Conditions*," Compl. ¶ 9 (emphasis added), but it attaches to the Complaint a different document called "Scott Systems International Inc. *Terms and Conditions of Sale*," Compl., Ex. B at 1 (emphasis added). And neither document is referenced in (much less attached to) any of the contracting documents exchanged between Transbotics and Infinity. Transbotics' Proposal

---

[3] Transbotics also does not allege that it provided a link or other hosted source at which Infinity could have accessed such terms. Although Infinity would not have been obligated to proactively search for any terms based on the Purchase Order, a general search of the internet reveals that there are several different options for terms and conditions available on Transbotics' website. This further confirms that the terms and conditions did not have a reasonably clear and ascertainable meaning.

references "*Transbotics'* standard Terms and Conditions of Sale," Compl., Ex. A at 32 (emphasis added), its Confirmation Letter references "*General System* Terms and Conditions," Compl., Ex. D (emphasis added), and Infinity's Purchase Order identifies no terms and conditions at all, Compl., Ex. C. Given this ambiguity, the terms and conditions were not "clear and ascertainable" and thus cannot be deemed to have been incorporated by reference or included as additional terms controlling the Purchase Order. *Radiant Glob. Logistics*, 2013 WL 12247048, at *5 (terms not incorporated by reference where they were "not disclosed" and there was "nothing to indicate that the rate terms were incorporated by reference into the contract"); *Batson-Cook*, 2011 WL 2182727, at *2.

Consequently, the Complaint fails to allege that there was a requisite "meeting of the minds" as to the applicable terms and conditions, if any. To form a binding contract, however, the consent of the parties as to *all* terms is essential. *See* O.C.G.A. § 13-3-2. In determining whether the parties had this necessary mutual assent or a meeting of the minds, Georgia courts apply an objective theory of intent. *Jones v. Frickey*, 618 S.E.2d 29, 31–32 (Ga. Ct. App. 2005). The "mirror image" rule requires acceptance of an offer to be "unconditional, unequivocal, and without variance of any sort" for terms of a contract to be enforceable. *Id.* Here, whether the Proposal was the offer and the Purchase Order was the acceptance, or the Purchase Order was the offer and the Confirmation Letter was the acceptance, there is no meeting of the minds as to the inclusion of the "Scott Systems International Inc. Terms and Conditions of Sale" attached as Exhibit B to the Complaint, and therefore no agreement that Transbotics would retain title until full payment is made. *Jones*, 618 S.E.2d at 31–32.[4]

---

[4] As discussed above, because performance of the contract (i.e., delivery of the AGVs) occurred in Georgia, Georgia law applies to Transbotics' claims arising out of the contract.

**2.      Even if They Had Been Agreed to, the Terms and Conditions Give Transbotics, at Most, an Unperfected Security Interest.**

Even if the terms and conditions were incorporated into the Proposal and Purchase Order (and they are not), Transbotics' replevin claim must be dismissed because the "Scott Systems International Inc. Terms and Conditions of Sale" attached as Exhibit B to the Complaint give Transbotics, at most, an unperfected security interest in the AGVs. Because the mere retention of an unperfected security interest in property does not provide for a right to possession of the AGVs, *KCK Res., Inc. v. Schwarz Properties, L.L.C.*, 885 S.E.2d 140 (N.C. Ct. App. 2023), Transbotics' replevin and trover claim fails.

As noted above, the terms and conditions contain a choice of law provision stating that "[t]he validity, performance and all other matters relating to the interpretation and effect of this contract shall be governed by the State of North Carolina, USA." Compl., Ex. B ¶ 28. Thus, if those terms and conditions apply to the Purchase Order, North Carolina law would govern the question of Transbotics' claim to title.

North Carolina's adoption of the UCC governs transactions for the sale of goods. *Fordham*

---

However, even if the place of formation of the contract provided the controlling law (i.e., Minnesota, where Infinity allegedly accepted the Proposal by sending the Purchase Order), the result would be the same. In Minnesota, a party must provide the referenced terms that are to be incorporated in a contract. *All Metro Glass, Inc. v. Tubelite, Inc.*, 227 F. Supp. 3d 1007, 1016 (D. Minn. 2016). When there is no allegation that the other party knew of or discussed the relevant terms, they are not incorporated into the contract by reference. *Id.* Moreover, under Minnesota law, Transbotics fails to allege that mutual assent existed as to these terms and conditions. *See Thomas B. Olson & Assocs., P.A. v. Leffert, Jay & Polglaze, P.A.*, 756 N.W.2d 907, 918 (Minn. Ct. App. 2008) ("Minnesota follows the 'mirror image rule,' which requires that an acceptance be 'coextensive with the offer and may not introduce additional terms or conditions.'" (citation omitted)); *Ballou v. Asset Mktg. Servs.*, LLC, 46 F.4th 844, 856 (8th Cir. 2022) ("Minnesota law is clear about an order to buy goods: When a vendor quotes a price to a potential customer or advertises its product, the vendor makes an invitation for the recipient to make an offer. When a buyer places a purchase order, the buyer makes an offer and is thus the offeror.").

*v. Eason*, 521 S.E.2d 701, 703 (1999). Under North Carolina's UCC, "[a]ny retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest." N.C. UCC § 25-2-401(1); *see also KCK Res., Inc.*, 885 S.E.2d 140 at *3 ("[I]f the transaction is one for the sale of goods, Plaintiff's attempt to retain title to the equipment is limited in effect to reservation of a security interest."). Thus, Transbotics' attempted retention of interest in the AGVs would amount to, at most, a reservation of a security interest, and "as a matter of law it cannot go beyond that." *Welco Indus., Inc. v. United States.*, 8 Cl. Ct. 303, 307 (1985), *aff'd* 790 F.2d 90 (Fed Cir. 1986); *Marine Midland Bank v. United States*, 687 F.2d 395 (Ct. Cl. 1982) (holding that progress payments were in the nature of a lien and the government had a security interest in the property).

Here, Transbotics does *not* allege that it perfected its alleged security interest in the AGVs. *See* N.C. Gen. Stat. § 25-9-310(a) ("[A] financing statement must be filed to perfect all security interests . . . ").[5] This is significant because when a party fails to perfect this security interest, other parties may have priority. *See Welco Indus., Inc.*, 8 Cl. Ct. at 307. Indeed, even a perfected security interest may be subordinate to the Government's security interest.[6] Because of this, Transbotics does not adequately allege that it has title or a right to possession of the AGVs, and its replevin claim must be dismissed. *See Exec. Cars, LLC*, 826 S.E.2d at 378 (explaining that a plaintiff must

---

[5] The Complaint does not allege that Transbotics perfected its security interest through the filing of a financing statement, and a search of the North Carolina UCC records does not yield any records in Transbotics' or SSI's name.

[6] Indeed, any interest Transbotics holds is likely subject to a title vesting clause held by the Government. *See In re Novartis Vaccines & Diagnostics, Inc.*, 735 S.E.2d 634 at *5-7 (N.C. Ct. App. 2012) (finding that title vesting clause in contract at issue vested title in the Government that precluded county government from taxing the property). With such a title vesting clause, the Government has title to the AGVs, regardless of any security interests other parties may have. *Id*. Even without such a clause, the Government would have a superior security interest to an unperfected security interest. *See Welco Indus., Inc*., 8 Cl. Ct. at 307.

allege that it "has title to the property or a right of possession" to succeed on a replevin claim) (internal citations and quotations omitted); *Thakkar*, 2018 WL 400728, at *6 (dismissing claim where plaintiffs failed to allege they held title or a right of possession).

### B.    The Complaint Fails to Allege that KPMG "Possesses" the AGVs.

To state a claim for trover and replevin, Transbotics must also allege that KPMG was in possession of the property when the action was brought. *Exec. Cars*, 826 S.E.2d at 378 (quoting *Thomas Mote Trucking v. PCL Civil Constructors*, 540 S.E.2d 261 (Ga. Ct. App. 2000)). The sole allegation regarding possession, however, is precisely the kind of conclusory allegation that must be disregarded on a motion to dismiss. *See King v. City of Albany*, No. 1:07-CV-158 (WLS), 2009 WL 10712945, at *3 (M.D. Ga. Mar. 31, 2009) (rejecting complaint that "merely provide[d] conclusory allegations" and a "recitation of the necessary elements").

Transbotics alleges that "Defendants the United States of America, KPMG *and/or* Infinity continue to exercise dominion and control over the property of" Transbotics, Compl. ¶ 36 (emphasis added), and that KPMG has "asserted an interest over the AGVs," *id.* ¶ 3. But "[c]onclusory allegations are not entitled to the assumption of truth" on a motion to dismiss. *Minden Pictures, Inc. v. RehabMart LLC*, No. 3:24-cv-00013-TES, 2024 WL 2819105, at *1 (M.D. Ga. June 3, 2024) (internal citations and quotations omitted). Transbotics must include more than a "mere recitation of the elements of a claim or conclusory allegations . . . to satisfy [its] burden of alleging enough facts to state a claim to relief that is 'plausible.'" *King*, 2009 WL 10712945, at *3. The Complaint does not include any factual allegations to support Transbotics' conclusory assertions that KPMG has possession of the AGVs, exercises actual control over the AGVs, or has ever possessed or exercised control over them. In fact, the only factual allegation regarding possession of the AGVs, is that they were delivered *to the Marine Corps base* in Albany, Georgia—not to KPMG. Compl. ¶ 17.

Courts regularly hold that conclusory and vague allegations of "possession" of property that lack supporting factual allegations are subject to dismissal. *See, e.g.*, *Stouffer v. J.P. Morgan-Chase Bank N.A.*, No. 3:18-CV-0591-G, 2018 WL 6570871, at *4 (N.D. Tex. Dec. 12, 2018) (rejecting "vague and conclusory allegations" of possession and title); *Jaakola v. Bank of NY Mellon*, No. CIV. 13-2919 DSD/JSM, 2014 WL 4829419, at *1 (D. Minn. Sept. 29, 2014), *aff'd*, 603 F. App'x 526 (8th Cir. 2015) (rejecting "mere allegations and conclusory statements regarding" the "possession of the property"); *Cont'l Airlines, Inc. 401(k) Sav. Plan v. Almodovar-Roman*, No. CV 16-5766, 2018 WL 2357754, at *3 (D.N.J. May 24, 2018) (noting that there was nothing beyond "conclusory allegations" to support that the defendant was "still in possession of the Mistaken Payment").

Because the Complaint does not include or incorporate sufficient factual allegations to establish that KPMG possesses the AGVs, Transbotics' claim for injunction, trover, and replevin against KPMG must be dismissed. *See Smith v. United States*, 873 F.3d 1348, 1354 (11th Cir. 2017) (upholding dismissal of claim for trover and conversion for failure to allege defendant's possession); *Thakkar*, 2018 WL 400728, at *6 (dismissing claim for trover and conversion where the plaintiffs alleged that personal property remained in the real property at issue, but did not allege that defendants had actual possession of the personal property); *Mallayev v. Cohen*, No. 1:07-CV-0094-JEC, 2009 WL 10697493, at *10 (N.D. Ga. Mar. 27, 2009) (concluding that claim under O.C.G.A. § 51–10–1 was "doomed" where plaintiff could not show that the defendant had "possession" of the property).

## C.    Transbotics Has Failed to Adequately Plead a Claim for Injunctive Relief.

Even if it stated an actionable claim for replevin and trover (and it did not), Transbotics has not sufficiently alleged that it is entitled to injunctive relief. Equitable relief, such as an injunction, should not be granted where a "party has an adequate remedy at law." *Hous. Auth. v.*

*MMT Enters., Inc*., 475 S.E.2d 642, 642 (Ga. 1996) (citing O.C.G.A. § 23–1–4) (finding that contractor had an adequate remedy at law where it could seek money damages for alleged breach of contract). Georgia courts have held that an adequate remedy of law exists in the context of breach of contract actions where a plaintiff can "obtain money damages for any breach." *Id.* at 642-43; *see also Century Bank of Ga. v. Bank of Am., N.A.,* 685 S.E.2d 82, 84 (Ga. 2009) (concluding that party had an "adequate remedy at law" because it "could be awarded a judgment of $215,470.81 to completely compensate it for any loss"); *Coleman v. Retina Consultants, P.C.,* 687 S.E.2d 457, 462 (Ga. 2009) (finding that equitable relief was "inappropriate" where plaintiff had "an adequate and complete remedy at law here because it could recover money damages").

Transbotics' allegations center on Infinity's alleged non-payment of the remaining balance of $615,388 out of a total $2,861,552. Even assuming that Transbotics could prevail on the underlying elements of its claims, it is not entitled to injunctive relief because it has an adequate remedy at law, namely, monetary damages for the $615,388 of alleged non-payment by Infinity. Thus, its request for injunctive relief must be dismissed. *Hous. Auth.,* 475 S.E.2d at 642; *Century Bank of Ga.,* 685 S.E.2d at 84.[7]

## II.    Transbotics' *In Rem* Claim Also Must Be Dismissed Because It Fails to Allege that It Has Retained Title to the AGVs.

Transbotics also asserts an *in rem* claim against the AGVs requesting a "judgment *in rem* that the AGVs are the lawful property of [Transbotics] and title to the AGVs belongs to [Transbotics]." Compl. ¶ 44. However, as discussed above, *see supra* Part I.A, Transbotics has not sufficiently alleged that it retained title to the AGVs. Transbotics has not alleged that the terms

---

[7] Moreover, Georgia's codification of the UCC provides a right to specific performance or replevin for the *buyer* of goods in certain limited circumstances. *See* O.C.G.A. § 11-2-716. This remedy is available to a buyer of goods in these limited circumstances, not to a seller such as Transbotics. *Id.*

and conditions were incorporated into the Purchase Order. *See supra* Part I.A.1. Additionally, at

most, Transbotics would only retain an unperfected security interest, *not* title to the AGVs. *See*

*supra* Part I.A.2. Because Transbotics cannot adequately allege that it has "title and ownership" of

the AGVs, its *in rem* claim must be dismissed. *See Henderson v. OneWest Bank FSB, ISAOA*, No.

1:10-CV-1989-TCB-LTW, 2011 WL 13216949, at *4 (N.D. Ga. July 25, 2011), *report and*

*recommendation adopted sub nom. Henderson v. OneWest Bank FSB*, No. 1:10-CV-1989-TCB,

2011 WL 13217336 (N.D. Ga. Aug. 18, 2011) (noting that a plaintiff must hold title to obtain an

*in rem* judgment).

### III.    Alternatively, the Terms and Conditions Require These Claims to be Brought in North Carolina.

Even if the terms and conditions attached to the Complaint were incorporated into the

Proposal and Purchase Order (which they were not), dismissal would still be required under the

forum-selection clause contained in those terms and conditions. Specifically, they provide that

"any dispute arising from or relating to this agreement shall be resolved solely and exclusively in

the courts located in Charlotte, North Carolina." Compl., Ex. B ¶ 28. This forum selection clause

requires all of Transbotics' claims to have been filed in North Carolina.

The enforceability of a forum selection clause is governed by federal law. *Shaw's*

*Menswear, Inc. v. Delongy*, No. 5:19-CV-104 (MTT), 2019 WL 3291542, at *1 (M.D. Ga. July

22, 2019). In the Eleventh Circuit, "non-parties may invoke a forum selection clause if they are

closely related to the dispute such that it becomes foreseeable that the non-parties will be bound

by the contractual selection of a forum." *Kruchoski v. MiMedx Grp., Inc.*, No. 1:17-CV-00577-

LMM, 2017 WL 3433697, at *9 (N.D. Ga. June 13, 2017) (internal quotations and alterations

omitted). "Being a party to the agreement, even a third-party beneficiary, simply is not a

precondition to enforcement." *Id.*

Here, all of Transbotics' claims arise out of its agreement with Infinity because that is the alleged source of Transbotics' purported title to the AGVs. If the Court concludes that Transbotics adequately alleged that the terms and conditions attached to the Complaint apply (which they do not), then the forum selection clause in those terms would require Transbotics to bring any claims in North Carolina courts and all of Transbotics' claims must be dismissed. *See Kruchoski*, 2017 WL 3433697, at *9; *Vickers v. Wells*, No. 1:05-CV-0930-RWS, 2006 WL 89858, at *5 (N.D. Ga. Jan. 11, 2006).

**IV.    Transbotics' Claim for Attorneys' Fees Fails Because Transbotics Fails to Adequately Plead that KPMG Has Acted in Bad Faith or Has Been "Stubbornly Litigious."**

Transbotics' claim for attorneys' fees (Fourth Claim) also fails. Transbotics alleges that it is "entitled to recover its costs and expenses of litigation, including attorneys' fees, from Defendants under O.C.G.A. § 13-6-11" because "Defendants have acted in bad faith, have been stubbornly litigious, and have caused Plaintiff unnecessary trouble and expense." Compl. ¶¶ 47-48. O.C.G.A. § 13-6-11 makes clear that "expenses of litigation generally shall ***not*** be allowed as a part of the damages." O.C.G.A. § 13-6-11 (emphasis added). The Complaint—which merely recites the elements of § 13-6-11—does not allege any facts to support a claim for attorneys' fees.

First, "bad faith" in this context requires "dishonest purpose or some moral obliquity, and implies conscious doing of wrong, and means breach of known duty through some motive of interest or ill will." *Davis v. Walker*, 655 S.E.2d 634, 639 (Ga. Ct. App. 2007) (internal citations and quotations omitted). Transbotics has not alleged that KPMG acted with any dishonest purpose or ill will. Second, Transbotics does not, and cannot, allege that KPMG was "stubbornly litigious" or caused "unnecessary trouble and expense." *See* O.C.G.A. § 13-6-11. Georgia courts have "repeatedly held that, if a bona fide controversy clearly exists between the parties, there is not 'any evidence' to support an award based on stubborn litigiousness or the causing of unnecessary

trouble and expense." *See Horton v. Dennis*, 750 S.E.2d 493, 497 (Ga. Ct. App. 2013). There can be no dispute that a bona fide controversy exists as to whether the Complaint states a claim for relief. Moreover, since Transbotics' underlying claims against KPMG fail, its claim for attorneys' fees also necessarily fails. *See Stockton v. Shadwick*, 870 S.E.2d 104, 112 (Ga. Ct. App. 2022) (upholding dismissal of claim under O.C.G.A. § 13-6-11 where "underlying claims" were dismissed). Thus, Transbotics' claim under § 13-6-11 must be dismissed. *See id.*

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed. Transbotics falls far short of adequately alleging that KPMG possesses the AGVs or that Transbotics has title or the right to possession of the AGVs. Given these shortcomings, the Complaint fails to state a claim against KPMG.

Dated:  September 10, 2024

*/s/ Charles G. Spalding, Jr.*
Charles G. Spalding, Jr.
Georgia Bar No. 411926
Jessica P. Corley*
Georgia Bar No. 572733
KING & SPALDING LLP
1180 Peachtree Street NE
Suite 1600
Atlanta, GA 30309
Telephone:     (404) 572-4600
Facsimile:     (404) 572-5100
cspalding@kslaw.com
jpcorley@kslaw.com

Steve Cave*
KING & SPALDING LLP
1650 Tysons Blvd
Suite 400
McLean, VA 22102
Telephone:     (703) 245-1000
Facsimile:     (703) 245-9900

* *Pro Hac Vice* forthcoming

*Attorneys for Defendant KPMG LLP*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of September 2024, I electronically filed the above and foregoing with the Clerk using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

*/s/ Charles G. Spalding, Jr.*
Charles G. Spalding, Jr.
Georgia Bar No. 411926

*Attorney for Defendant KPMG LLP*